## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

THOMAS FLEEMAN, )
                                 )
        Plaintiff, )
                                 )
v. )        No. 2:20-cv-00081-JAR
                                 )
MISSOURI DEPARTMENT )
OF CORRECTIONS, et al., )
                                 )
        Defendants. )

### MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Thomas Fleeman for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $1.70. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, this action will be dismissed without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly

payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of his motion for leave to proceed in forma pauperis, plaintiff has attached a copy of his certified inmate account statement. (Docket No. 3). The account statement shows an average monthly deposit of $8.50. The Court will therefore assess an initial partial filing fee of $1.70, which is 20 percent of plaintiff's average monthly deposit.

### Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the

2

plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

### The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Moberly Correctional Center (MCC) in Moberly, Missouri. He brings this action pursuant to 42 U.S.C. § 1983. His complaint names the following defendants: (1) the Missouri Department of Corrections (MODOC); (2) Corizon Medical Services, LLC (Corizon); (3) Director of Operations for Constituent Services J. Cofied; (4) Associate Regional Medical Director T. Bredeman; (5) Health Services Administrator Bonnie Boley; (6) Dr. Ruanne Stamps; (7) Nurse Practitioner Unknown Davison; and (8) Director of Nursing Andrea Crader. (Docket No. 1 at 2-5). Defendants Cofied, Bredeman, Boley, Dr. Stamps, Davison, and Crader are all sued in their individual capacities only. (Docket No. 1 at 4-5).

This action concerns the treatment plaintiff has received for Hepatitis-C (HCV) while incarcerated. Specifically, he argues that his constitutional rights have been violated because he has not been given a direct-acting antiviral drug (DAA drug). Attached to the complaint are several exhibits, including an informal resolution request (IRR), an informal resolution request response,

an offender grievance, a grievance response, an offender grievance appeal, an offender grievance appeal response, and an order of dismissal from a prior case filed by plaintiff against some of the same defendants. (Docket No. 1-1). The Court has reviewed these exhibits and will treat them as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

According to plaintiff, HCV is a viral infection that attacks the liver, causing inflammation known as hepatitis. (Docket No. 1 at 8). This liver inflammation "can significantly impair liver function and damage its crucial role in digesting nutrients, filtering toxins from the blood, preventing disease, and making possible all the essential metabolic processes of the body." This impairment can also cause severe side-effects, such as pain, weakness, fatigue, and increased risk of heart attack.

Plaintiff states that a significant number of people developing "acute HCV go on to develop chronic HCV," causing fibrosis – or scarring – of the liver. Such fibrosis reduces liver function, as scar tissue cannot perform the job of normal liver cells. (Docket No. 1 at 9). When scar tissue takes over most of the liver, it is termed cirrhosis, and is irreversible. Cirrhosis can cause additional complications such as widespread itching, pain, kidney disease, fluid retention, internal bleeding, ascites, mental confusion, lymph disorders, and fatigue. Plaintiff asserts that for a person who has cirrhosis, "each day without treatment causes additional, irreversible scarring and permanently reduces the function of the liver." He was diagnosed with cirrhosis of the liver on May 3, 2019. (Docket No. 1 at 13).

Treatment for HCV is considered successful when it results in a sustained virologic response for three months following the treatment's end. (Docket No. 1 at 9). To that end, plaintiff states that the Food and Drug Administration has approved several DAA drugs, which purportedly cure over 90% of the patients treated with them. He further contends that the Centers for Disease Control, the Infectious Disease Society of America, and the American Association for the Study of Liver Diseases have developed a "standard of care" for HCV. (Docket No. 1 at 9-10). Based on this standard, plaintiff states that "continuing medical research has demonstrated the safety, tolerability, and dramatic benefits of treating all persons with HCV." (Docket No. 1 at 10). As such, plaintiff suggests that treatment with DAA drugs is recommended "for all patients with chronic HCV infection."

By way of further explanation, plaintiff states that there are several methods used to determine the advancement of cirrhosis or fibrosis in a person who has HCV. For instance, a patient can undergo a liver biopsy or fibro-scan. (Docket No. 1 at 11). Additionally, there is the AST[1] to platelet ratio index (APRI), a ratio "derived using the level of a certain enzyme in the blood…and comparing it to [the] usual amount of AST in the blood of a healthy person [and] the number of platelets in the affected person's blood." Finally, plaintiff states that the FIB-4 is "a ratio derived using the level of two enzymes in the blood, AST and alanine aminotransferase (ALT), as well as platelet count and the person's age."

Plaintiff acknowledges that a high APRI score is good at predicting severe fibrosis or cirrhosis. He alleges, however that low and midrange APRI "scores may miss many people who have significant fibrosis or cirrhosis." Plaintiff further states that due to the fluctuation of AST and ALT levels, even normal readings may fail to show the level of fibrosis or cirrhosis. He also

---

[1] Aspartate amino-transferase.

suggests that the levels of AST and ALT "often fail to predict the eventual outcomes of a failure to treat the disease in a specific person."

As to plaintiff's individual condition, he states that he became infected with HCV in 2008. (Docket No. 1 at 12). He began experiencing adverse symptoms and requested a blood test in 2018, while he was in MCC. Plaintiff was allegedly advised "that his white blood-cell count was so low that he was in danger of being unable to clot if he had any severe bleeding. (Docket No. 1 at 12-13). Plaintiff asserts that he requested to be treated for HCV after learning about his low white blood cell count. (Docket No. 1 at 13).

On September 26, 2018, plaintiff filed an IRR in which he stated his "urgent need for treatment of his worsening HCV." He states that he was "denied treatment" because he "was not a priority." He next filed a formal grievance, and later a grievance appeal. The grievance appeal "again stated he was not a priority for treatment of HCV." As noted above, plaintiff states that he was diagnosed with cirrhosis of the liver on May 3, 2019, and that he has experienced "serious symptoms consistent with HCV." He asserts that he has "sustained serious injuries from the direct result of [defendants'] failure to treat his Hep-C virus." (Docket No. 1 at 15). Plaintiff further states that the denial of DAA drugs and the delay in treatment increases his likelihood of liver cancer, reduction in liver function, and painful complications.

With regard to defendants MODOC and Corizon, plaintiff asserts that MODOC "is a state executive agency" and is responsible for the medical needs of those individuals in its custody, while Corizon is a private company that is "the single health care provider for all [MODOC] facilities." (Docket No. 1 at 7). He alleges that MODOC and Corizon "have created and maintained a policy of customs and practices which systematically deny necessary medical care and treatment to inmates diagnosed with Hepatitis-C." (Docket No. 1 at 6). Furthermore, plaintiff contends that

6

MODOC and Corizon "have a policy and custom of not providing DAA drug treatment to all inmates with HCV, or even all inmates with chronic HCV." (Docket No. 1 at 12). According to plaintiff, this "policy and custom" comes from "basing treatment decisions on cost, rather than an inmate's need for treatment."

Plaintiff asserts that MODOC and Corizon have repeatedly denied his requests for DAA drugs to treat his HVC. Instead, he has been classified as a chronic care offender, and receives a blood draw every six months, as well as minimal counseling. He states that this policy discriminates against him and other similarly situated inmates. (Docket No. 1 at 7). Plaintiff also believes that this "policy" contradicts the prevailing standard of care and amounts to deliberate indifference. (Docket No. 1 at 12).

As to the six individual defendants, plaintiff alleges that "[e]ach medical care provider" he "has seen at MCC has denied all of [his] requests for treatment of HCV, including" Crader, Davison, Boley, Dr. Stamps, Cofied, and Bredeman.[2] (Docket No. 1 at 13). In particular, he broadly contends that they acted with deliberate indifference in refusing to treat him with DAA drugs.

With regard to defendant Boley, plaintiff states that Boley was a registered nurse and Health Services Administrator at MCC. According to plaintiff, she knew that he had complained of liver pain, but still denied his liver pain-related grievance. She also "exhibited deliberate indifference by failing to direct plaintiff's care providers to provide HCV treatment or to conduct proper [testing], monitoring, and consulting." (Docket No. 1 at 7). Plaintiff attached Boley's November 12, 2018 grievance response, which states in relevant part:

---

[2] In his "Statement of Claim," plaintiff refers to Nurse Andrea Crader as "Carter," and to Director of Operations Cofied and "Cofield." For purposes of consistency, the Court will continue to refer to defendants using the spellings provided in the case caption.

> Subsequent to review and investigation, the results are as follows: We understand your concerns related to your diagnosis of Hepatitis C. Let me assure you we are providing everyone treatment in accordance to current priorities as opposed to "waiting until you get sicker." We are currently working on those offenders who meet the definition of priority one. After treatment of priority one offenders, we will move on to priority two and then on to priority three offenders. During this time you will continue to be monitored by your site physician in a chronic care clinic. At this time, you meet the priority 3 definition as you did in April 2017 at ERDCC, March 2018 at MECC and again in June 2018 when you were seen here at MCC in the Hepatitis Chronic [C]are [C]linic. In conclusion, I find that you are a priority 3 and will be evaluated annually.

(Docket No. 1-1 at 4).

Boley's grievance response was also signed by Dr. Stamps. Plaintiff asserts that Dr. Stamps was a doctor at MCC and his treating physician. (Docket No. 1 at 7). He accuses Dr. Stamps of exhibiting "deliberate indifference by failing to provide [him] with HCV treatment." (Docket No. 1 at 7-8).

As to defendant Davison, plaintiff states that Davison was a nurse practitioner at MCC. (Docket No. 1 at 8). Plaintiff alleges that Davison was "the person who defined [him] as too low of a priority to treat and was responsible for his treatment plan." Due to this, plaintiff contends that Davison was deliberately indifferent to his medical needs.

With regard to defendant Bredeman, plaintiff states that Bredeman was the Regional Director for Corizon. He allegedly "exhibited deliberate indifference by failing to direct plaintiff's care providers to provide HCV treatment or conduct proper testing, monitoring, and consulting."

Regarding defendant Cofied, plaintiff asserts that Cofied was the Director of Operations of Constituent Services at MCC, and that she knew of plaintiff's HCV. Despite this knowledge, Cofied "denied his HCV-related grievances with deliberate indifference by failing to direct

plaintiff's care providers to provide him with HCV treatment." (Docket No. 1 at 7). Plaintiff attached Cofied's November 30, 2018 grievance appeal response, which provides in relevant part:

> Upon review of your medical record, grievance records and investigation...I found that you have a diagnosis of Hepatitis C. Your record shows that you were last evaluated/examined in the chronic care clinic for Hepatitis C on June 7, 2018, and received recent lab testing by the medical staff at MCC[.] [Y]our records note that the results of your testing did not show a medical priority for you to receive treatment at this time. Priority status is determined by the calculations of the APRI score and FIB-4 score, along with the physical exam findings and history of certain other medical conditions. The APRI score is calculated using the AST level in the platelet count. The score is a predictor of cirrhosis. A FIB-4 score helps to estimate the amount of scarring in the liver. You will continue to be monitored in the chronic care clinic on a routine basis; therefore you may address any further questions that may arise with the provider during these appointments. This monitoring will include a routine comprehensive metabolic panel (CMP), which includes an AST level, ALT level, and 22 other test[s]. A complete blood count is also considered, particularly with regards to the platelet count.

(Docket No. 1-1 at 6).

Due to defendants' actions, plaintiff states that he has sustained serious injuries. (Docket No. 1 at 15). He alleges that he was denied DAAs prior to being diagnosed with cirrhosis, and that he should have been treated with such drugs even though testing indicates that he is not at a level warranting him being given priority for such treatment.

Plaintiff seeks a declaratory judgment that the policy of MODOC and Corizon of withholding treatment by DAA drugs violates the Eighth and Fourteenth Amendments, and the Americans with Disabilities Act. (Docket No. 1 at 18). He also requests $1 million in compensatory damages, and an injunction ordering MODOC and Corizon to treat him with DAA drugs.

## Prior Lawsuit

Before filing the instant action, plaintiff previously filed a similar lawsuit in the United States District Court for the Eastern District of Missouri. The earlier case was filed on August 30, 2019. *Fleeman v. Corizon, et al.*, No. 2:19-cv-75-SNLJ (E.D. Mo.). He submitted an amended complaint on February 10, 2020.

The amended complaint named Corizon, Cofied, Bredeman, Boley, Dr. Stamps, and Crader as defendants. In the amended complaint, plaintiff accused defendants of not treating his HCV, resulting in a diagnosis of cirrhosis of the liver. Specifically, plaintiff alleged that the Food and Drug Administration had approved a new DAA drug, but "denied [him] access to this life saving treatment, allowing him to progress into full blown cirrhosis."

On June 18, 2020, the Court dismissed plaintiff's amended complaint without prejudice for failure to state a claim. The Court noted that plaintiff's claim against Corizon regarding its alleged policy and custom was conclusory, and unsupported by any facts. As to the individual defendants, the Court explained that plaintiff's accusations regarding the failure to grant his grievances did not state a constitutional claim. Furthermore, plaintiff failed to demonstrate that the individual defendants were directly involved in or personally responsible for a violation of plaintiff's rights. Finally, the Court explained that plaintiff's allegations amounted to a disagreement over a treatment decision, which did not rise to a constitutional violation.

Plaintiff appealed the dismissal of his case. On October 26, 2020, the United States Court of Appeals for the Eighth Circuit summarily affirmed. *Fleeman v. Corizon, et al.*, No. 20-2455 (8th Cir. 2020).

The Court notes that the instant action differs from the earlier case only in that two additional defendants – MODOC and Davison – have been added, and that plaintiff has included

additional general information regarding HCV and its treatment. Otherwise, the substance of the two actions are nearly identical, in that plaintiff is alleging that his HCV should have been treated with DAA drugs regardless of his medical priority level.

## Discussion

Plaintiff is a self-represented litigant who brings this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs. Because he is proceeding in forma pauperis, the Court has reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

### A. MODOC

Plaintiff has named MODOC as a defendant in this action. MODOC is a department of the State of Missouri. As such, plaintiff's claim against it is actually a claim against the state itself. Such a claim, however, is barred by sovereign immunity.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The Eleventh Amendment bars suit against a state or its agencies for

any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id.* The second exception is when a state waives its immunity to suit in federal court. *Id.* at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply, because the Supreme Court has determined that 42 U.S.C. § 1983 does not revoke the states' Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception likewise has no bearing on this matter, as Missouri has not waived its immunity in this type of action. *See* Mo. Rev. Stat. 537.600 (explaining that sovereign immunity is in effect, and providing exceptions).

As noted above, the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe*, 495 F.3d at 594. It therefore follows that plaintiff's claim is barred, unless there is an applicable exception. However, no exceptions to

12

sovereign immunity are apparent in this case. Plaintiff is thus barred from bringing suit against MODOC, and his claim must be dismissed.

## B. Corizon

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent...official policy that inflicts injury actionable under § 1983").

"Policy" refers to an "official policy, a deliberate choice of a guiding principle or procedure made by the...official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). For a policy that is constitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face...a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

In order to establish an unconstitutional custom, plaintiff must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the...entity's employees;

13

2) Deliberate indifference to or tacit authorization of such conduct by the...entity's policymaking officials after notice to the officials of that misconduct; and

3) That plaintiff was injured by acts pursuant to the...entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*See Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

In this case, plaintiff alleges that Corizon has "a policy and custom of basing treatment decisions on cost, rather than an inmate's need for treatment." He also contends that Corizon has "a policy and custom of not providing DAA drug treatment to all inmates with HCV, or even all inmates with chronic HCV, in contradiction of the prevailing Standard of Care."

With regard to plaintiff's contention that Corizon has an unconstitutional policy or custom of basing treatment decisions on cost, plaintiff has not presented any facts to support his conclusion. That is, there are no factual allegations showing that Corizon officials have made a "deliberate choice" to base treatment decisions on how much those treatments cost, or to deny necessary treatment simply because it is expensive. Likewise, he has not shown a widespread, persistent pattern of inmates being denied treatment solely based on its cost. In stating a cause of action, a "pleading that merely pleads labels and conclusions, or a formulaic recitation of the elements of a cause of action, or naked assertions devoid of factual enhancement will not suffice." *Hamilton v. Palm*, 621 F.3d 816, 817-18 (8th Cir. 2010). As to this specific claim, plaintiff has merely presented a conclusion regarding a Corizon policy and custom, without bolstering that conclusion with any factual enhancement.

As to plaintiff's assertion that Corizon has a policy and custom of not providing DAA treatment to all HCV-infected inmates, plaintiff has not demonstrated that this inflicted an injury

actionable under 42 U.S.C. § 1983. To state a deliberate indifference claim under § 1983, plaintiff "must allege…(1) that he suffered objectively serious medical needs and (2) that the [defendants] actually knew of but deliberately disregarded those needs." *Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). While plaintiff has established that he has serious medical needs, he has not shown that those needs are being deliberately disregarded by Corizon.

The main thrust of plaintiff's complaint is that he should be treated with DAA drugs. In essence, he is stating that Corizon's failure to prescribe these drugs amounts to an absolute denial of treatment. To support that contention, he refers several times to a "standard of care," which he derives from the Centers for Disease Control, the Infectious Disease Society of America, and the American Association for the Study of Liver Diseases. Based on this standard, plaintiff states that treatment with DAA drugs is recommended "for all patients with chronic HCV infection."

The Court notes that this "standard of care" – at least according to plaintiff – provides that DAA drugs are the "recommended treatment" for HCV patients, without ever stating that it is the *only* treatment, or that other approaches are somehow medically inappropriate. Moreover, this "standard of care" is not the constitutional standard by which his case his judged. Rather, as previously noted, that standard is deliberate indifference, and requires a deliberate disregard of a serious medical need. Plaintiff has not demonstrated a deliberate disregard stemming from a Corizon policy or custom. To the contrary, plaintiff's own exhibits belie his contention that he is being denied treatment. In assessing whether an action is subject to dismissal under 28 U.S.C. § 1915, the Court may consider such materials attached to the complaint. *See Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint").

According to plaintiff's own exhibits, plaintiff has been consistently monitored by onsite health professionals at a chronic care clinic. Based on testing done on plaintiff at three different medical evaluations, he was determined to be a "priority three" offender. It was because of this determination that plaintiff was a low medical priority that he was not receiving DAA drugs. Plaintiff was advised that treatment was based on priority, with the needs of priority one and two offenders coming first. He was also advised that he would continue to be monitored and tested.

Aside from plaintiff's reference to the recommendation found in a "standard of care" – a standard that is not alleged to be binding – there is no indication that Corizon's prioritization of plaintiff was medically inappropriate. There are also no allegations that plaintiff was wrongly prioritized. Instead, plaintiff's complaint highlights a disagreement in the way he should be treated. However, "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation." *Meuir v. Greene Cty. Jail Emps.*, 487 F.3d 1115, 1118-19 (8th Cir. 2007). For these reasons, the claim against Corizon must be dismissed.

**C. Individual Capacity Claims**

Plaintiff has sued Dr. Stamps, Davison, Crader, Boley, Bredeman, and Cofied in their individual capacities only. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore,

"there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

All six of the individual defendants are alleged to have been deliberately indifferent to plaintiff's medical needs. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more

than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

### i.     Dr. Stamps and Nurse Practitioner Davison

At the time relevant to the complaint, plaintiff asserts that Dr. Stamps was his treating physician at MCC, while Davison was a nurse practitioner responsible for plaintiff's treatment plan. Plaintiff alleges that both were deliberately indifferent to his medical needs because they "refused to treat [him] with DAA drugs in contradiction of the prevailing Standard of Care."

The allegations against Dr. Stamps and Davison are insufficient to show that their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." Nothing in the complaint suggests that either Dr. Stamps or Davison refused to see plaintiff, delayed in seeing him, or otherwise acted in intentional disregard of his medical needs. Plaintiff's entire claim rests on the assertion that they should have treated him in a specific way – with DAA drugs – and argues that such treatment represents the prevailing "standard of care." As already noted, however, this "standard of care" does not purport to require treatment with DAA drugs, but only recommends it. In other words, there is no support for the proposition that plaintiff's proffered "standard of care" is binding in such a way that Dr. Stamps's or Davison's refusal to follow it was ipso facto medically inappropriate. Furthermore, plaintiff does not establish that Dr. Stamps or Davison were deliberately indifferent in wrongly prioritizing him as priority three, or that they failed to monitor his ongoing condition. Instead, as plaintiff's own exhibits demonstrate, plaintiff was seen, tested, and monitored regularly for his HCV.

Ultimately, plaintiff's claims against Dr. Stamps and Davison amount to a difference in opinion regarding his course of treatment. Plaintiff alleges that he should have been treated with DAA drugs regardless of his medical priority. Meanwhile, his exhibits show that his healthcare

providers were treating those with the highest need first, and those with lesser needs later. This disagreement does not amount to a violation of the constitution. *See Meuir*, 487 F.3d at 1118-19 ("A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation"); and *Cejvanovic v. Ludwick*, 923 F.3d 503, 507 (8th Cir. 2019) (stating that a "mere disagreement with treatment decisions...does not rise to the level of a constitutional violation"). Absent a constitutional violation, plaintiff has failed to state a claim. Therefore, the claims against Dr. Stamps and Davison must be dismissed.

### ii. Regional Director Bredeman

Bredeman is alleged to be the Regional Director for Corizon at their Missouri Regional Office. Plaintiff accuses him of deliberate indifference by failing to direct his "care providers to provide HCV treatment or conduct proper testing, monitoring, and consulting."

There is no indication in the complaint that Bredeman was personally involved in or personally responsible for any of the incidents that allegedly deprived plaintiff of his constitutional rights. *See Mayorga*, 442 F.3d at 1132 (explaining that 42 U.S.C. § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights"). Rather, plaintiff appears to be attempting to assert Bredeman's liability in his role as a supervisor.

Vicarious liability is inapplicable to § 1983 suits. *Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Thus, "a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010). *See also Morris v. Cradduck*, 954 F.3d 1055, 1060 (8th Cir. 2020) ("To state a claim against a supervisor, a plaintiff must show that the supervising official, through his own individual actions,

19

violated the Constitution"). To succeed, "[t]he plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts," which "requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996).

In this case, plaintiff broadly asserts that Bredeman was deliberately indifferent by failing to direct plaintiff's healthcare providers to provide certain treatment. Aside from being wholly conclusory, plaintiff's allegations make no effort to demonstrate that Bredeman even had notice of plaintiff's situation. That is, even assuming that plaintiff's healthcare providers were acting in such a way as to violate his constitutional rights, there are no facts establishing that Bredeman was deliberately indifferent to or tacitly authorized those acts. Bredeman cannot be held liable simply because he is a supervisor. Rather, plaintiff must show that he had notice of wrongdoing, and then failed to take appropriate action. Plaintiff has not made such a showing. Therefore, the claim against Bredeman must be dismissed.

### iii. Director of Nursing Crader, Health Services Administrator Boley, and Director of Operations Cofied

Crader is alleged to be the Director of Nursing, Boley the Health Services Administrator, and Cofied the Director of Operations of Constituent Services. According to plaintiff, both Boley and Cofied knew of his chronic HCV, denied his HCV-related grievances, and acted with deliberate indifference by failing to direct plaintiff's healthcare providers to provide him with HCV treatment. As to Crader, she is only mentioned in the complaint as part of a general accusation against all defendants for refusing to treat him with DAA drugs. Based on plaintiff's exhibits, however, he appears to be asserting the same claim against her as he did against Boley and Cofied. That is, similar to Boley and Cofied, Crader answered plaintiff's IRR on September 28, 2018, after plaintiff complained he was not being treated for HCV.

To the extent that plaintiff is alleging that defendants Crader, Boley, and Cofied are liable for denying his grievances, he has failed to state a constitutional claim. An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

To the extent that plaintiff is alleging that Crader, Boley, and Cofied were deliberately indifferent, he has not demonstrated that they disregarded a serious medical need. *See Roberts*, 917 F.3d at 1042. To begin, plaintiff presents no facts showing that Crader, Boley, or Cofied were personally or directly responsible for treating him. Instead, he bases his claim on their supervisory positions, arguing that they failed to direct his healthcare providers to give him DAA drugs.

Plaintiff's allegations that he was not given DAA drugs does not, in and of itself, show that Crader's, Boley's, and Cofied's actions in denying his grievances were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *See Jackson*, 756 F.3d at 1066. Each of these three defendants responded to plaintiff's complaints. Those responses have been attached as exhibits. In the exhibits, Crader, Boley, and Cofied all explain that plaintiff is

being monitored and tested regularly. They also show that plaintiff has been given a priority three based on those tests. Aside from his reference to a "standard of care" allegedly developed by outside organizations, plaintiff presents no facts showing that such prioritization is not medically appropriate. He has also not alleged that he has been wrongly prioritized. Thus, plaintiff has not shown that the refusal by Crader, Boley, or Cofied to demand plaintiff's healthcare providers give him DAA drugs is violative of the constitution.

As previously noted, plaintiff's allegations amount to a disagreement in his course of treatment. He believes that he should be treated with DAA drugs regardless of his medical priority status. On the other hand, as demonstrated by plaintiff's exhibits, prison healthcare officials are treating HCV patients according to their medical need, starting with priority one patients first. A disagreement with a treatment decision is insufficient to establish deliberate indifference. *See Meuir*, 487 F.3d at 1118-19 ("A prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fails to rise to the level of a constitutional violation"); *Cejvanovic*, 923 F.3d at 507 (stating that a "mere disagreement with treatment decisions…does not rise to the level of a constitutional violation"); and *Gibson*, 433 F.3d at 646 (stating that a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence).

For all the reasons discussed above, the individual capacity claims against Crader, Boley, and Cofied must be dismissed.

### D.  Preservice Dismissal

Under 28 U.S.C. § 1915, the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2). As noted above, the instant case is similar to a prior case filed against

many of the same defendants, in which plaintiff alleged deliberate indifference due to a failure to treat his HCV with DAA drugs. The earlier case was dismissed on preservice review based on conclusory allegations, a failure to demonstrate personal responsibility on behalf of the individual defendants, and because plaintiff had established only a disagreement in treatment decisions, which did not amount to a constitutional violation. That dismissal was later summarily affirmed by the United States Court of Appeals for the Eighth Circuit.

The instant case is also subject to dismissal, for many of the same reasons. Plaintiff's claim against MODOC is barred by the Eleventh Amendment's sovereign immunity. The claim against Corizon is conclusory, simply restating a cause of action. Moreover, plaintiff has not shown that Corizon's actions in treating him based on his medical priority amounts to deliberate indifference. The claims against the individual defendants are vague about the personal responsibility of each person. More importantly, his claims against these defendants boil down to a disagreement over the course of his treatment. Since deliberate indifference does not encompass disagreements regarding treatment decisions, these claims fail to state a constitutional violation. While plaintiff's concerns are certainly understandable, for all the above-stated reasons, this action is subject to dismissal without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.70 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison

registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 9th day of _____ July _____, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE